## UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ALLSTATE INSURANCE COMPANY,<br><br>                    Plaintiff,<br><br>         v.<br><br>JEFFREY BOBROSKI,<br><br>                    Defendant. | Case No.  3:23-cv-246<br><br>**VERIFIED COMPLAINT FOR INJUNCTION AND OTHER RELIEF** |

Plaintiff Allstate Insurance Company ("Allstate"), by and through its undersigned attorneys, alleges as follows for its Verified Complaint against Defendant Jeffrey Bobroski ("Bobroski"):

## NATURE OF THE ACTION

1.     This action is the result of Bobroski failing to comply with certain promises he made and obligations he owes to Allstate. Specifically, Bobroski failed to comply with the duties and obligations he owes Allstate by soliciting Allstate customers and selling products that compete with Allstate from within one mile of his former Allstate Agency location.

2.     Bobroski executed an Allstate "Confidentiality and Non-Competition Agreement" ("Agreement") with Allstate and Allstate Exclusive Agent Matthew Campagna ("EA Campagna") on May 8, 2018. (A copy of the Agreement is attached as Exhibit A).

3.     The Agreement allowed Bobroski to sell, and receive monies from the sale of, Allstate products and services (jointly, "products"). The Agreement, or more specifically the promises made by Bobroski in the Agreement, allowed Bobroski to receive and use Allstate confidential information to sell Allstate products and receive monies from the sale of Allstate products.

4.      Under the Agreement, Bobroski agreed that, for one year following the termination of his relationship with Allstate, he would not solicit Allstate customers that he sold Allstate products to and who were Allstate customers at the time the Agreement terminated.

5.      Bobroski also agreed to not solicit, for one year after the Agreement terminated, Allstate customers that a) he learned about as a result of working for EA Campagna or from Allstate confidential information he received while working for EA Campagna and b) were Allstate customers at the time the Agreement terminated.

6.      Lastly, Bobroski agreed, for one year after him Agreement terminated, to not sell products that compete with Allstate products from any office or business site located within one mile of EA Campagna's Agency location, 927 West High Street in Ebensburg, Pennsylvania ("Allstate Agency Location").

7.      The Agreement further required Bobroski to acknowledge that he would be granted access to Allstate confidential information, that Allstate confidential information is the property of Allstate, and that he would not disclose Allstate confidential information to any third party or permit any third party to access Allstate confidential information.

8.      Lastly, Bobroski agreed to return all Allstate property, including Allstate confidential information, upon termination of his Agreement and relationship with Allstate.

9.      Bobroski's Agreement, and his relationship with Allstate and EA Campagna, terminated on May 22, 2023.

10.     Instead of honoring the duties and obligations he owed (and still owes) Allstate after the Agreement terminated, Bobroski is soliciting Allstate customers to leave Allstate for him new competing insurance agency.  Bobroski's new agency is at 1100 West High Street in Ebensburg, Pennsylvania.  1100 West High Street is within one mile of 927 West High Street (i.e.

the Allstate Agency Location).

11.     In fact, Bobroski's new agency is so close to the Allstate Agency Location that you can see Bobroski's new agency from the Allstate Agency Location.  (See attached pictures and Google map, Exhibit B).

12.     Bobroski is, based upon information and belief, soliciting Allstate customers via telephone calls, electronic mail and personal visits.

13.     The large number of Allstate customer solicitations by Bobroski indicates that Bobroski stole and is using Allstate confidential information (i.e. an Allstate customer list) to solicit Allstate customers and compete with Allstate.

14.     Similarly, Allstate customers with no relationship to Bobroski are being solicited by Bobroski, which is further evidence of Bobroski using Allstate confidential information to solicit Allstate customers and compete with Allstate.

15.     Finally, at 10:30 p.m. on the day before he terminated his Agreement and relationship with Allstate, Bobroski entered the Allstate Agency Location.  There was no reason for Bobroski to enter the Allstate Agency Location at such a late hour other than to download and/or take Allstate confidential information.

16.     Bobroski's actions are a clear violation of the Agreement, as well as a violation of Federal and Pennsylvania law.  Consequently, Allstate now brings suit against Bobroski for breach of the Agreement, misappropriation of trade secrets, and tortious interference.

17.     In doing so, Allstate requests that this Court enter an order enjoining Bobroski from continuing his knowing and intentional breach of the Agreement, and award Allstate compensatory and punitive damages for Bobroski's intentional and illegal acts.  Allstate also requests that the Court award Allstate its attorneys' fees pursuant to the terms of the Agreement and the law.

18.     More specifically, Allstate requests that this Court enter an order: (1) enjoining Bobroski, and anyone acting in concert with him, from soliciting Allstate customers; (2) enjoining Bobroski, and anyone acting in concert with him, from selling products that compete with Allstate products from within one mile of the Allstate Agency Location; (3) enjoining Bobroski, and anyone acting in concert with him, from using, possessing or accessing Allstate confidential information; (4) compelling Bobroski to return to Allstate all Allstate property, including all Allstate confidential information, in his custody, possession or control; (5) awarding Allstate compensatory and punitive damages for Bobroski's intentional and illegal acts; and (6) awarding Allstate its reasonable attorneys' fees as provided for under the Agreement and applicable law.

## THE PARTIES AND RELEVANT PERSONS

19.     Allstate Insurance Company ("Allstate") is an Illinois corporation with its principal place of business located in Northbrook, Illinois.

20.     Jeffrey Bobroski ("Bobroski") is a citizen of the State of Pennsylvania and resides at 412 South Locus Street in Edensburg, Pennsylvania.

## JURISDICTION AND VENUE

21.     This Court has subject matter jurisdiction over this dispute, pursuant to 28 U.S.C. § 1331, because Allstate's claims against Bobroski under the Federal Defend Trade Secrets Act, 18 U.S.C. § 1833, *et seq.*, raise a Federal question.  Allstate's remaining claims fall within the Court's supplemental jurisdiction, pursuant to 28 U.S.C. § 1367, because the claims are so related to the Federal question that they form part of the same case or controversy.

22.     Alternatively, this Court has diversity jurisdiction, pursuant to 28 U.S.C. § 1332(a), because this action and controversy is between citizens of different states and exceeds the value of $75,000, exclusive of interest and costs.

23.     This Court has personal jurisdiction over Bobroski because he is a citizen and resident of Pennsylvania.  Venue is proper in the United States District Court for the Western District of Pennsylvania, pursuant to 28 U.S.C. § 1391(b), because Bobroski resides in this District, the property Allstate seeks to be returned is located in this District, and a substantial part of the events giving rise to Allstate's claims occurred in this District.

## BACKGROUND

### Allstate's Business and Hiring of Independent Agents

24.     Allstate is one of the nation's leading providers of insurance products to individuals and businesses.  Among other things, Allstate provides automobile insurance, and property and casualty insurance, to individuals and businesses.

25.     In addition to providing these products directly, Allstate appoints independent exclusive agents ("Exclusive Agents"), through its Exclusive Agency Program, to sell Allstate products.

26.     Allstate rigorously screens its Exclusive Agents to ensure that the agents are qualified to represent and sell Allstate products, have the proper tools and facilities to analyze and meet customer needs, and can furnish customers with appropriate insurance solutions.

27.     Allstate Exclusive Agents hire employees to assist them with the selling of Allstate products.  These employees, known as Licensed Service Providers ("LSPs"), are only permitted access to Allstate confidential information and allowed to sell Allstate products after they sign an agreement with Allstate and the Exclusive Agent stating that the LSP will, among other things, a) keep Allstate confidential information confidential and b) agree to certain post-termination restrictive covenants.  Neither the Exclusive Agents, nor the LSPs, have access to Allstate confidential information or Allstate customers until they sign their respective agreements with

Allstate.

28.     Allstate expends substantial resources advertising, marketing and promoting its products.   The Exclusive Agents and LSPs benefit, directly and indirectly, from Allstate's advertising, marketing and promotional efforts, as well as from Allstate's goodwill, reputation and name recognition.   These efforts and expenditures allow the Exclusive Agents and LSPs to develop and cultivate customer accounts and relationships on behalf of Allstate.

29.     Allstate relies heavily upon repeat business and renewal of policies to maintain its competitive advantage in the highly competitive insurance industry.   Maintaining goodwill and a solid business reputation with its customers is a critical component of Allstate's success.

## Protection of Allstate Confidential Information

30.     Allstate and its customers entrust the Exclusive Agents and LSPs to safeguard and protect Allstate confidential information, which includes information relating to, among other things, a customer's personal data, date of birth, social security numbers, types of policies, amount of insurance, premium amounts, description and location of assets and property, claims histories, insurance needs, pricing information, and other insurance coverage information, from unauthorized use or disclosure.

31.     Allstate protects its information (described in paragraph 30 by, among other things: limiting the disclosure and use of this information to only the Exclusive Agent and LSP who needs this information to sell Allstate products; educating the Exclusive Agent and LSP about the requirement and necessity of keeping this information confidential; restricting access to this information by restricting access to computer networks and requiring the use of passwords to access the information; and, as discussed below, requiring the Exclusive Agent and LSP to execute written agreements that protect against the misuse and improper disclosure of Allstate confidential

information.

32.     Consequently, all Exclusive Agents and LSPs, pursuant to their agreements with Allstate and while performing services under their agreements, acknowledge that they will have access to Allstate confidential information, promise to not disclose Allstate confidential information to anyone not authorized to receive it, and confirm that they will not use Allstate confidential information for their own benefit or for any improper purpose.

33.     Exclusive Agents and LSPs agree, upon termination of their relationship with Allstate, to continue treating Allstate confidential information as confidential, not disclose (either directly or indirectly) Allstate confidential information to any third party, and immediately return all Allstate confidential information to Allstate.

34.     Hence, Allstate's confidential information is not available to the general public and is closely guarded by Allstate.  Allstate keeps such information strictly confidential in order to protect its customers' privacy and to maintain a competitive advantage in the highly competitive insurance business.  Not surprisingly then, Exclusive Agents and LSPs do not have access to Allstate confidential information before becoming affiliated with Allstate and only have access to Allstate confidential information because of their affiliation with Allstate and their promises to keep Allstate confidential information confidential.

**Bobroski Enters into the Agreement to Solicit and Sell Allstate Products**

35.     Bobroski was hired by EA Campagna on or about May 8, 2018 to sell Allstate products from 927 West High Street in Ebensburg, Pennsylvania (i.e. the Allstate Agency Location).

36.     Before Bobroski could sell Allstate products, Bobroski had to sign, and did in fact sign, the Agreement. (See Agreement, Exhibit A).

37.     Under the Agreement, Bobroski acknowledged that the following information is Allstate "confidential information" and property:

> business plans of [Allstate]; information regarding the names, addresses, and ages of policyholders; types of policies; amounts of insurance; premium amounts; the description and location of insured property; the expiration or renewal dates of policies; policyholder listings and any policyholder information subject to any privacy law; claim information; certain information and material identified by [Allstate] as confidential or information considered a trade secret as provided herein or by law; and any information concerning any matters affecting or relating to the pursuits of [Allstate] that is not otherwise lawfully available to the public.  All such confidential information is wholly owned by [Allstate].  Such confidential information may be used by Agency only for the purposes of carrying out the provisions of this Agreement.

 (Agreement, § 3.)

38.     Pursuant to Section 4 of the Agreement, Bobroski agreed that he would not, at any time or in any manner, directly or indirectly, use Allstate confidential information for any purpose other than to carry out the provisions of the Agreement.  (Agreement, § 4.)

39.     Pursuant to Section 5 of the Agreement, Bobroski acknowledged that all confidential information he was provided, and had access to, would at all times remain Allstate property and was to be returned to Allstate upon termination of the Agreement and relationship with Allstate.  (Agreement, § 5.)

40.     Pursuant to Section 7 of the Agreement, Bobroski agreed that, for a period of one year following termination of the Agreement, he would not solicit the purchase of products competitive with those sold by Allstate:

- With respect to any person, company, or organization to whom [EA Campagna] or any person employed by [EA Campagna], including [Bobroski], sold insurance or other products or services on behalf of [Allstate] and who is a customer of [Allstate] at the time of termination of the Agreement;

- With respect to any person, company, or organization who is a customer of [Allstate] at the time of termination of the Agreement and whose identity was discovered as a result of [Bobroski's] access to confidential information of [Allstate][1]; or

- From any office or business site located within one mile of the [Allstate Agency location].  (Agreement, § 7(1-3).)

41.     Bobroski recognized that a breach of any of the provisions in the Agreement would "cause irreparable damage to [Allstate's] business and that such damage will be difficult or impossible to measure." (Agreement, § 10.)

42.     Accordingly, Bobroski agreed that if he breached any of the duties and obligations he owed Allstate under the Agreement, then Allstate would be "entitled to an order granting injunctive relief from any court of competent jurisdiction," in addition to other rights and remedies. (*Id*.)

43.     Bobroski also agreed that Allstate would be "entitled to an award of reasonable attorneys' fees in the event that [Allstate] is successful in an application for injunctive relief or in an action based upon the breach" of any of the terms set forth in the Agreement.  (*Id*.)

44.     After signing the Agreement, Bobroski sold Allstate products out of the Allstate Agency Location.

45.     He also met with Allstate customers at the Allstate Agency Location and several Allstate customers came into the Allstate Agency Location on a regular basis and had Bobroski service their insurance needs.

**Bobroski Breaches the Agreement**

46.     Bobroski terminated the Agreement and his relationship with EA Campagna and Allstate on May 22, 2023.

---

[1] The Allstate customers identified in paragraph 40 are collectively referred to as "Allstate customers."

47.     Consequently, on May 22, 2023, Bobroski promised to, among other things: (a) immediately return all Allstate confidential information and property to Allstate; (b) not solicit Allstate customers until after May 22, 2024; and (c) not sell products that compete with Allstate from within one mile of the Allstate Agency Location until after May 22, 2024.  (Agreement, §§ 3, 4, 5 and 7.)

48.     After termination of the Agreement, however, Bobroski decided to work for a competing insurance agency and sell products that compete with Allstate from within one mile of the Allstate Agency Location.

49.     In fact, Bobroski decided to work for a competing insurance agency that can be seen from the Allstate Agency Location.  (See photo and Google Map, Exhibit B).

50.     He also began contacting and soliciting Allstate customers to leave Allstate and, instead, purchase insurance products from Bobroski.

51.     More specifically, Bobroski called (and is calling) Allstate customers to tell them that he was with a new insurance agency and he then solicited the customers to leave Allstate and, instead, purchase insurance products from Bobroski.

52.     Not surprisingly then, Allstate agencies in the local market, including EA Campagna, have received several cancellation requests from Allstate customers that were formerly serviced by Bobroski when he was affiliated with Allstate and EA Campagna.

53.     Just as important and disturbing, Bobroski entered the Allstate Agency Location at 10:30 p.m. shortly before terminating the Agreement and his relationship with EA Campagna and Allstate.

54.     Bobroski's normal working hours at the Allstate Agency Location ended at 5:00 p.m.  Bobroski did not work past 5:00 p.m. and, as such, had no reason to enter the Allstate Agency

Location at 10:30 p.m.

55.     The Allstate Agency Location also closes at 5:00 p.m.   By working for EA Campagna and at the Allstate Agency Location, Bobroski knew that no one would be at the Allstate Agency Location when he went to the location at 10:30 p.m. shortly before terminating the Agreement and his relationship with EA Campagna and Allstate.

56.     Bobroski did not have permission from EA Campagna to enter the Allstate Agency Location at 10:30 p.m.

57.     The only reason for Bobroski to enter the Allstate Agency Location at 10:30 p.m. was to take Allstate Confidential Information (such as a confidential Allstate customer list) from EA Campagna and the Allstate Agency Location, and then use Allstate confidential information to solicit Allstate customers for his new insurance agency.

58.     The large number of solicitations by Bobroski, as well as Bobroski's actions shortly before terminating the Agreement and his relationship with EA Campagna and Allstate, demonstrate that Bobroski is using Allstate confidential information to solicit Allstate customers.

59.     After learning that Bobroski was soliciting Allstate customers and operating a competing insurance agency from within one mile of the Allstate Agency Location, on July 20, 2023, Allstate sent correspondence to Bobroski demanding that Bobroski immediately cease soliciting Allstate customers and stop selling products that compete with Allstate from within one mile of the Allstate Agency Location.  Allstate also demanded the immediate return of all Allstate confidential information and property.  (A copy of the July 20, 2023 letter is attached as Exhibit C.)

60.     Bobroski's solicitation activities did not cease after Allstate sent the July 20th letter. Instead, Bobroski continued soliciting Allstate customers and selling products that compete with

Allstate products from within one mile of the Allstate Agency Location.

61.     Bobroski also did not return Allstate confidential information.

62.     Instead, Bobroski continued (and continues) to solicit Allstate customers and use Allstate confidential information in his solicitation of Allstate customers.

63.     Accordingly, Bobroski refuses to honor the duties and obligations he owes Allstate under the Agreement and the law by, among other things, continuing to use Allstate confidential information to solicit Allstate customers, continuing to solicit Allstate customers, and continuing to sell products that compete with Allstate from within one mile of the Allstate Agency Location.

64.     As a consequence of Bobroski's refusal to honor the duties and obligations he owes Allstate, Allstate continues to experience customer losses and the misuse of Allstate confidential information.

## Irreparable Harm to Allstate

65.     Bobroski is harming Allstate's legitimate business interests, including its goodwill and customer relationships, by soliciting Allstate customers and selling products that compete with Allstate from within one mile of the Allstate Agency Location.

66.     Existing Allstate customers that Bobroski serviced or with whom he communicated with may pass directly by, or come into, Bobroski's new Agency, see Bobroski, and mistakenly believe they are dealing with Allstate.  Bobroski can then solicit these customers to leave Allstate and become customers of his new insurance agency (*i.e.*, an Allstate competitor).

67.     Thus, by soliciting Allstates customers as a competitor and selling products that compete with Allstate out of his new location that is within eyesight of the Allstate Agency Location, Bobroski is threatening the relationship between Allstate and its customers.

68.     Bobroski is also in possession of Allstate confidential information and the only

reason for Bobroski to possess Allstate confidential information is to use Allstate confidential information on behalf of himself and his new insurance agency.

69.     Allstate confidential information, customer relationships, and goodwill are therefore at risk because Bobroski is unfairly competing with Allstate by using Allstate confidential information to solicit Allstate customers.

70.     Consequently, it is both probable and imminent that an existing or prospective customer may purchase insurance products from Bobroski instead of from Allstate.

71.     Accordingly, injury to Allstate is therefore both probable and imminent because Bobroski clearly intends to continue violating the Agreement and the law.

72.     Put another way, Allstate is suffering irreparable harm which may not be adequately rectified or compensated by money damages.

73.     Injunctive relief is therefore necessary and appropriate to prevent further damage to Allstate.

## COUNT I
### (Breach of Contract)

74.     Allstate repeats and realleges each and every allegation contained in paragraphs 1 through 73 of the Complaint, as if fully set forth herein.

75.     On May 8, 2018, Bobroski entered into the Agreement with Allstate and EA Campagna.  (Ex. A).

76.     The Agreement is a valid and enforceable contract.

77.     Under the Agreement, Bobroski promised, for a period of one year following the termination of the Agreement, to not sell products competitive with Allstate products from within one mile of the Allstate Agency Location.

78.     Under the Agreement, Bobroski promised, for a period of one year following the

termination of the Agreement, to not solicit Allstate customers.

79.    Under the Agreement, Bobroski promised, upon termination of the Agreement, to immediately return all property belonging to Allstate.

80.    Bobroski further promised to not use Allstate confidential information for any purpose other than carrying out the provisions of the Agreement.

81.    The post-termination covenants found in the Agreement are reasonable in scope and duration, and are necessary to protect Allstate's legitimate business interests in its confidential information, goodwill, and longstanding customer relationships.

82.    Allstate performed all of the duties and obligations it owes Bobroski under the Agreement.

83.    Bobroski breached the Agreement by, among other things, misusing Allstate confidential information to solicit Allstate customers, soliciting Allstate customers, refusing to return Allstate confidential information to Allstate, and selling products that compete with Allstate products from within one mile of the Allstate Agency Location.

84.    Bobroski continues to breach the Agreement, by, among other things, misusing Allstate confidential information to solicit Allstate customers, soliciting Allstate customers, and refusing to return Allstate confidential information to Allstate.

85.    Allstate has incurred significant damages as a result of Bobroski's breach of the Agreement. Bobroski's illegal solicitations and actions have caused Allstate to lose customers and potential customers. Bobroski's illegal solicitations and actions have also damaged Allstate's goodwill, reputation, and legitimate business interests. Allstate's damages are in excess of $75,000.00.

86.    Moreover, Bobroski's breaches of the Agreement are continuing. Allstate is

therefore subject to continuing irreparable harm, economic injury, and damage to its goodwill and business reputation.

87.     Allstate has no adequate remedy at law and, unless injunctive relief is granted, Allstate will continue to be irreparably harmed by Bobroski's breach of the Agreement in a manner that is not fully compensable by money damages.

88.     Allstate therefore requests that this Court grant injunctive relief against Bobroski that prohibits Bobroski from a) using Allstate confidential information, b) soliciting Allstate customers, and c) selling products that compete with Allstate from within one mile of the Allstate Agency Location.

89.     Allstate further requests that this Court order Bobroski to immediately return to Allstate all Allstate confidential information and property in the custody, possession, or control of Bobroski.

90.     Finally, and pursuant to Section 10 of the Agreement, Allstate is entitled to recover the attorneys' fees and costs Allstate incurs as a result of Bobroski' breaches of the Agreement.

## COUNT II
### (Misappropriation of Trade Secrets – Pennsylvania Trade Secrets Act)

91.     Allstate repeats and re-alleges each and every allegation contained in paragraphs 1 through 90 of the Complaint, as if fully set forth herein.

92.     During the course of him relationship with Allstate, Bobroski was exposed to substantial amounts of Allstate confidential information.

93.     For instance, Bobroski had access to: Allstate business plans; information regarding the names, addresses, and ages of policyholders or prospective policyholders of Allstate; types of policies; amounts of insurance; premium amounts; the description and location of insured property; the expiration or renewal dates of policies; policyholder listings; policyholder information that is

subject to privacy law; and claim information.

94.     The information identified in paragraphs 30, 37 and 93 is not available to the general public and is closely guarded by Allstate.  Allstate keeps such information strictly confidential in order to protect its customers' privacy and to maintain an advantage in the highly competitive insurance business.

95.     This information is considered a trade secret under the Pennsylvania Uniform Trade Secrets Act ("PTSA"), 12 P.S. § 5302 et seq, because Allstate derives independent economic value from this information not being generally known to the public, the information is not readily ascertainable by proper means by persons who could obtain economic value from its disclosure or use, and the information is the subject of reasonable efforts to maintain its secrecy.

96.     The economic value of the Allstate trade secrets/confidential information Bobroski had access to under the Agreement is over $500,000.

97.     Under the PTSA, "actual or threatened misappropriation [of trade secrets] may be enjoined."

98.     Bobroski is misappropriating Allstate trade secrets by refusing to return Allstate property, including Allstate confidential information, and using that information to solicit Allstate customers.

99.     Upon information and belief, Bobroski's refusal to return Allstate property, including Allstate confidential information, constitutes the "threatened" misuse of Allstate trade secrets and injunctive relief is therefore appropriate.

100.    Accordingly, Allstate requests that this Court enter an order enjoining Bobroski from using any Allstate confidential information, and from disclosing Allstate confidential information to anyone not authorized to receive the confidential information.

101.     Allstate also requests that this Court enter an order requiring Bobroski to return any and all Allstate confidential information to Allstate, as he is required to do pursuant to the Agreement and the PTSA.

102.     In addition, Bobroski' actions have damaged Allstate's goodwill, reputation, and legitimate business interests.

103.     Allstate is therefore entitled to compensatory and exemplary damages in an amount to be proven at trial, as well as reasonable attorneys' fees.

104.     Finally, Bobroski's misappropriation of Allstate's trade secrets was willful and malicious.

105.     Allstate therefore requests an award of compensatory damages, exemplary damages, and reasonable attorneys' fees as a result of Bobroski's willful and malicious misappropriation of Allstate trade secrets.

**Count III**
**(Violation of Federal Defend Trade Secrets Act)**

106.     Allstate repeats and realleges paragraphs 1 through 105 of the Complaint, as if fully set forth herein.

107.     During the course of his relationship with Allstate, Bobroski was provided access to substantial amounts of Allstate confidential information, including the confidential information identified in paragraphs 30, 37 and 93.

108.     Allstate confidential information is not available to the general public and is closely guarded by Allstate. Allstate keeps such information strictly confidential in order to maintain a competitive advantage over competitors.

109.     Allstate confidential information is considered a trade secret under the Defend Trade Secrets Act, 18 U.S.C. § 1833, *et seq.* ("DTSA"), because the information is not generally

known outside of Allstate's business, the information is not generally known by employees and others involved in Allstate's business, Allstate has taken reasonable measures to guard the secrecy of the information, the information is of great value to Allstate and its competitors, Allstate invested significant amounts of time and money in developing the information, the information cannot easily be acquired or duplicated by others, and because Allstate continuously uses the information in its business.

110.   Bobroski was under a contractual obligation to return Allstate confidential information to Allstate immediately upon termination of the Agreement.

111.   Bobroski, however, ignored (and continues to ignore) his contractual obligations by maintaining possession of Allstate confidential information, using that confidential information to unfairly compete with Allstate, and, based upon information and belief, passing that confidential information along to third parties who are not authorized to receive, possess, or access Allstate confidential information.

112.   Unless restrained, Bobroski will continue to use, divulge, disclose, acquire and/or otherwise misappropriate Allstate confidential information.

113.   Furthermore, actual or threatened misappropriation of confidential information may be enjoined under the DTSA.

114.   It is axiomatic that if Bobroski is actively using Allstate confidential information and ignoring the terms of the Agreement, then Bobroski has no intention of complying with the DTSA.

115.   Consequently, Bobroski' actions constitute the actual and/or threatened misuse of Allstate confidential information.  Injunctive relief against Bobroski is therefore appropriate.

116.   Naturally then, Allstate requests an order enjoining Bobroski from using Allstate

confidential information and from disclosing Allstate confidential information to anyone not authorized to receive the confidential information.

117.    Allstate further requests an order requiring Bobroski to return any and all Allstate confidential information to Allstate.

118.    Finally, Bobroski's misappropriation of Allstate confidential information has been willful and malicious, and Allstate has incurred significant damages as a result of Bobroski's misappropriation.

119.    Bobroski's actions have also damaged Allstate's good will, reputation, and legitimate business interests.

120.    Allstate is therefore entitled to recover not only compensatory damages, but also punitive damages and attorneys' fees resulting from Bobroski's wrongful misappropriation of Allstate confidential information.

## COUNT IV
### (Tortious Interference)

121.    Allstate repeats and realleges each and every allegation contained in paragraphs 1 through 120 of the Complaint, as if fully set forth herein.

122.    Bobroski was and is aware of the contractual relationship between Allstate and Allstate's customers, as well as Allstate's expectancy in developing relationships with potential customers.

123.    Bobroski knew and understood that Allstate's contractual relationship with its customers would continue after Bobroski's Agreement terminated.

124.    Pursuant to the Agreement, Bobroski was obligated not to solicit or otherwise interfere with Allstate's customer relationships for a period of one year after the termination of the Agreement.

125.    Nevertheless, Bobroski solicited Allstate customers after the Agreement terminated in order to have Allstate customers terminate their relationships with Allstate.

126.    Hence, Bobroski knowingly, intentionally, willfully, and maliciously interfered with Allstate's customer relationships within a year of the termination.

127.    Bobroski's conduct was not privileged or justified.

128.    Allstate has incurred significant damages as a result of Bobroski's interference with Allstate's contractual relationships.  Allstate has suffered the loss of customers and potential customers.  Bobroski's actions have also damaged Allstate's goodwill, reputation, and legitimate business interests.

129.    As a direct and proximate result of Bobroski's tortious interference, Allstate has been damaged in an amount to be determined at trial, and is entitled to the recovery of punitive damages as well.

**WHEREFORE**, Plaintiff Allstate Insurance Company respectfully requests that this Court:

1.    Enter an injunction enjoining and restraining Jeffrey Bobroski, and his agents, representatives, associates, employees, and all those acting in concert or participation with him, from:

    (a)    soliciting Allstate customers that Bobroski sold Allstate products to and/or Bobroski possessed confidential information about, and who were Allstate customers at the time him Agreement terminated;

    (b)    using any Allstate confidential information for his own benefit and from disclosing Allstate confidential information to anyone not authorized to receive the information; and

    (c)    selling products that compete with Allstate products from within one mile of the Allstate Agency Location.

2.    Enter an order requiring Bobroski to return all Allstate confidential information in

his possession, custody or control to Allstate;

3.       Enter judgment against Bobroski for compensatory damages in an amount to be determined at trial;

4.       Enter judgment against Bobroski for punitive damages in an amount to be determined at trial;

5.       Award Allstate the costs and expenses, including reasonable attorneys' fees, Allstate incurs as a result of Bobroski's breach of the Agreement;

6.       Award Allstate the costs and expenses, including reasonable attorneys' fees, Allstate incurs as a result of Bobroski's violation of the Pennsylvania Trade Secrets Act and Federal Defend Trade Secrets Act; and

7.       Award Allstate such other relief as the Court may deem just and proper.


Dated:  October 6, 2023                                    Respectfully submitted,

                                                             **BENESCH FRIEDLANDER COPLAN & ARONOFF LLP**

                                                             */s/ Gregory J. Phillips*
                                                             Gregory J. Phillips
                                                             Benesch Friedlander Coplan & Aronoff LLP
   127 Public Square, Suite 4900
   Cleveland, OH 44114
   Telephone: (216)363-4472
   Facsimile: (216)363-4588
   Email: GPhillips@beneschlaw.com

   J. Scott Humphrey (admission forthcoming)
   Katie M. Burnett (*pro hac vice* forthcoming)
   Benesch Friedlander Coplan & Aronoff LLP
   71 South Wacker Drive, Suite 1600
   Chicago, Illinois 60606
   Telephone: (312) 624-6420
   Facsimile: (312) 767-9192
   Email: shumphrey@beneschlaw.com
                kburnett@beneschlaw.com

*Attorney for Plaintiff Allstate Insurance Company*

## **VERIFICATION**

Pursuant to 28 U.S.C. § 1746, I, Dan Mattingly, on behalf of Plaintiff Allstate Insurance

Company, verify under penalty of perjury that the foregoing statements in the Verified Amended

Complaint are true and correct to the best of my knowledge, information and belief.

_____

Dated:  October 6, 2023